IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    vs.<br><br>$27,390.00 UNITED STATES CURRENCY,<br><br>                Defendant. | Civil No. 8:24CV119<br><br>**COMPLAINT FOR FORFEITURE *IN REM*** |

The United States of America, for its cause of action against the Defendant property, pursuant to Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, states and alleges as follows:

### Nature of the Action

1. This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881.

### The Defendant *in rem*

2. Defendant property is $27,390.00 United States Currency seized by law enforcement from a vehicle operated by Mason Trevillion during a traffic stop at the intersection of Highway 75 and Highway 8 near Dawson, Nebraska on November 6, 2023.

3. The U.S. Customs and Border Protection currently has custody of the Defendant's property.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction for an action commenced by the United States pursuant to 28 U.S.C. § 1345, and for an action for forfeiture pursuant to 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action pursuant to 21 U.S.C. § 881.

5.  This Court has *in rem* jurisdiction over the Defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

6.  Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

## Basis for the Forfeiture

7.  Defendant property, $27,390.00 United States Currency, is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, 2) proceeds traceable to such an exchange, and/or 3) money, negotiable instruments and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

## Facts

8.  On November 6, 2023, Richardson County Sheriff's Office Deputy Braden Shiley observed a silver Mercury sedan traveling southbound on Highway 75 near Dawson, Nebraska with dark window tint on the side windows.

9.  Deputy Shiley initiated a traffic stop at the intersection of Highway 75 and Highway 8.

10. Deputy Shiley was wearing a police authorized body camera that was in working condition.

11. Deputy Shiley reported that he was unable to see into the vehicle while shining his flashlight directly at the windows as he made a passenger side approach to the vehicle.

12. As the passenger window was rolled down, Deputy Shiley smelled the odor of marijuana coming from the vehicle.

13. When the window was completely down, Deputy Shiley observed a large amount of cash loosely laying on the passenger floorboard of the vehicle.

14. There were three occupants in the car identified as driver, Mason Trevillion (Trevillion), front-seat passenger, Alejandro Ceballos (Ceballos), and back-seat passenger, Jose Vargas-Orbe (Vargas-Orbe).

15. Trevillion was the registered owner of the vehicle.

16. Deputy Shiley searched the vehicle and found several lighters throughout the vehicle and a large amount of rubber-banded cash underneath the driver's seat.

17. It is believed Vargas-Orbe took the cash that was previously observed laying on the passenger floorboard and placed it in his pocket.

18. During the vehicle search, Deputy Jared Anderson arrived to assist with the traffic stop.

19. Deputy Anderson spoke with passenger Vargas-Orbe, who was not able to provide Ceballos' name.

20. Once the vehicle search was completed, Deputy Shiley asked Ceballos about his trip. Ceballos said that they were going to see "his" family, pointing at Trevillion.

21. Ceballos could not state the driver's first or last name although he said that they had been friends for a long time.

22. Ceballos told Deputy Shiley that he had "9-10" in cash on his person, which Deputy Shiley understood to mean $9,000.00-$10,000.00.

23. When questioned about his work, Ceballos began to stammer and said that he did not

3

have an official job but did plumbing work.

24. Ceballos stated he had a record of possession of marijuana with intent to distribute.

25. Ceballos confirmed that the group was traveling to Texas, but he did not know the location in Texas.

26. Ceballos said that he had known the driver since his sophomore year of high school. He stated the group planned to stay in Texas between 3 to 5 days, depending on "how cool" the driver's family was.

27. Deputy Anderson found out that Vargas-Orbe was a known criminal gang member. Deputy Anderson checked Vargas-Orbe's criminal history. Vargas-Orbe has a Nebraska state felony conviction in 2022 for felon in possession of a firearm.

28. Deputy Anderson found approximately $10,000.00 in cash in Vargas-Orbe's pockets. Vargas-Orbe told Deputy Anderson that the money came from side jobs as well as his account balances from his recent incarceration with the Department of Corrections.

29. Deputy Anderson also checked Ceballos' criminal history. Ceballos has a Nebraska state felony conviction in 2023 for possession of marijuana with intent to distribute.

30. Deputy Shiley returned to his patrol vehicle and asked Trevillion for the name of his backseat passenger. Trevillion could not answer the question, stating "they already said that shit, bro."

31. Deputy Shiley noted that Trevillion was able to hear the radio traffic in the patrol vehicle when Deputy Anderson ran the background checks.

32. Deputy Shiley read Trevillion his Miranda warnings and asked about the source of the currency. Trevillion said that the cash came from his bank account but could not state

how much came from the account nor could he show proof that the cash came from his bank account.

33. Deputy Shiley reported that Trevillion would not answer his questions about the source of the cash. Trevillion did state that he was "selling brakes and rotors."

34. Deputy Shiley questioned Trevillion again about Ceballos' last name, and he still could not identify the last name.

35. Based on the totality of the circumstances, Deputy Shiley seized the currency because of its connection to drug trafficking.

36. Trevillion, Ceballos, and Vargas-Orbe each signed a "Voluntary Disclaimer of Interest and Ownership" form, which states, in part, "I, Alejandro Ceballos, hereby disclaim any and all interest I may have in the undetermined amount of U.S. Currency. . . ."

37. Deputy Shiley informed U.S. Customs and Border Protection that he notated the three disclaimer forms with the handwritten note "will provide proof to county attorney" prior to the parties signing the form. He explained that he made the notation because the parties did not want to sign the form disclaiming their interest, but the deputy did not have any other form available to use to show that cash was seized.

38. Deputy Shiley issued a citation to Trevillion for the excess window tint and failure to have a driver's license.

39. All the occupants were released at the conclusion of the stop.

40. The seized cash was transported to Richardson County Law Enforcement Center.

41. Chief Deputy Jeremiah Franks used his certified narcotics detection canine, Freya, who gave a positive indication of the presence of a narcotics odor emitting from the box holding the cash.

42. The seized currency totaled $27,390.00 (Trevillion $7,000.00; Ceballos $10,072.00; Vargas-Orbe $10,318.00).

43. Deputy Anderson reported that many of the bills that Vargas-Orbe had in his pocket were in small denominations of $20. The bank used an older cash counter to count all of the seized currency, which did not record the number of denominations.

44. In a letter dated November 10, 2023, Ceballos' attorney, Jason Troia (Troia) wrote to the Richardson County Attorney requesting the return of the seized currency.

45. Troia wrote that the vehicle occupants split up the cash before the vehicle was searched so that Ceballos would not be in possession of the full amount.

46. Troia also stated that Ceballos did not fully understand the disclaimer of interest form that he signed.

47. Troia stated the cash was partially from $9,780.00 that the state government recently agreed to release to Ceballos and the rest was from his work in the construction trade.

48. The release of funds arose from the previously mentioned criminal conviction for possession of marijuana with intent to distribute. Ceballos was also convicted on a felony charge of no drug tax stamp. Ceballos was ordered to pay restitution in the amount of $10,000.00. By agreement with the State, Ceballos received the balance of the currency seized after payment of restitution from the seized funds.

49. Plaintiff's Counsel has requested documentation verifying the same.

50. In addition, Troia provided screenshots of Ceballos' cell phone capturing the conversation with an individual selling a vehicle.

51. Ceballos is negotiating price and indicated he would drive from Lincoln to purchase the vehicle. Ceballos ends the conversation telling the seller "the police pulled us over and they seized the money for the car thinking the money was for something else so now I gotta go in person for proof of the money to get it back from the county."

52. There were no phones seized or downloaded at the time of seizure.

53. Law enforcement was not told or aware of the above information concerning the purchase of the vehicle during the stop or during their investigation.

54. On November 21, 2023, HSI adopted this matter.

55. On November 30, 2023, U.S. Customs and Border Protection's Minneapolis Fines, Penalties, and Forfeitures Office ("FP&F") sent Ceballos, Vargas-Orbe, and Trevillion notice of seizure regarding the $27,390.00 in cash seized during the traffic stop in Dawson, Nebraska.

56. Even though the three interested parties (Ceballos, Vargas-Orbe, and Trevillion) signed a "disclaimer of interest" form regarding the cash found during the vehicle stop, the form did not waive their rights under Federal law, and therefore, notice was sent to all interested parties.

57. On January 4, 2024, FP&F received a timely response from Ceballos through his attorney, Jason E. Troia.

58. Ceballos requested that the matter be referred for judicial proceedings.

59. Vargas-Orbe and Trevillion did not respond to the seizure notice.

60. In his signed claim form, Ceballos claimed an interest in all of the seized currency.

61. Ceballos stated that he was the owner of the funds.

62. He did not provide any information on the source of the funds at the scene of the traffic stop.

63. The $27,390.00 in United States Currency seized from a suspected drug courier showed no evidence that it was ever engaged in legitimate business.

**Claim for Relief**

WHEREFORE the United States of America prays the Defendant property be proceeded against for forfeiture in accordance with the laws, regulations and rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulations; that the costs of this action be assessed against the Defendant property; and for such other and further relief as this Court may deem just and equitable.

        UNITED STATES OF AMERICA,
        Plaintiff

        SUSAN T. LEHR
        United States Attorney

By:    s/ Kimberly C. Bunjer
        KIMBERLY C. BUNJER, #20962
        Assistant U.S. Attorney
        1620 Dodge Street, Suite 1400
        Omaha, NE   68102-1506
        Tel: (402) 661-3700
        Fax: (402) 345-5724
        E-mail:  kim.bunjer@usdoj.gov

## VERIFICATION

I, Craig Allrich, hereby verify and declare under penalty of perjury that I am a Special Agent with the Homeland Security Investigations (HSI) and that I have read the foregoing Complaint for Forfeiture *in Rem* and know the contents thereof, and that the factual matters contained in paragraphs 8 through 62 of the Complaint for Forfeiture *in Rem* are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a with Homeland Security Investigations (HSI).

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: April 2, 2024.

_____
CRAIG ALLRICH
Special Agent,
Homeland Security Investigations (HSI)